# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH VALENZUELA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:15-cv-00291-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 27, 30) |

## I.

## INTRODUCTION

Plaintiff Jeremiah Valenzuela ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from chronic irritable bowel syndrome, depression, affective disorder, anxiety, and avoidant personality traits.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 12, 13.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff previously filed a claim for disability benefits which was denied on September 21, 2010. (AR 72-80.) The Appeals counsel denied review on May 9, 2011. (AR 85-87.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 7, 2011, and a Title XVI application for supplemental security income on May 25, 2011. (AR 108, 330.) Plaintiff's applications were initially denied on October 20, 2011, and denied upon reconsideration on May 25, 2012. (AR 217-221, 224-228.) Plaintiff requested and received a hearing before Administrative Law Judge Christopher Larsen ("the ALJ"). Plaintiff appeared for a hearing on July 26, 2013. (AR 25-.) On August 9, 2013, the ALJ found that Plaintiff was not disabled. (AR 7-19.) The Appeals Council denied Plaintiff's request for review on December 24, 2014. (AR 1-3.)

### A.    Hearing Testimony

Plaintiff testified at the July 26, 2013 hearing. (AR 28-40, 41.) Plaintiff was born on April 27, 1982, and lives with his parents. (AR 28-29.) Plaintiff completed high school. (AR 29.) Plaintiff had surgery in 1998 for a perforated sigmoid colon. (AR 31.)

Plaintiff last worked for about four and one half years in a restaurant. (AR 29.) Plaintiff worked as a pizza cook for about eleven months, he bussed tables for six months, and was moved to the buffet after that. (AR 29.) When he made pizza he would use premade dough that was put through a machine to flatten. (AR 41.) He would use a rolling pin to make sure it did not have bubbles. (AR 41.) Plaintiff was moved because the manager noticed that he lacked in his work. (AR 30.) Plaintiff left in 2006 when his symptoms got worse and he was getting sick at night as well as in the morning. (AR 30.)

Plaintiff had bad pain in the center of his stomach. (AR 31.) He would start with gassy pains in his lower back and then the pain would start in his stomach and he would have to be in the restroom for quite a while. (AR 31.) The pain would travel to his sides and the lower part of his belly button. (AR 31.) He would have pressure in the area where he had surgery in 1998. (AR 31.) Plaintiff was fired because he was missing a lot of work and was not performing. (AR

1  32.)

2       Plaintiff's symptoms started becoming unbearable in the middle of 2004.  (AR 32.)

3  Plaintiff did not know what was going to happen when he went to work each day so he was not

4  comfortable there anymore.  (AR 32.)  In the morning, Plaintiff would wake up with his stomach

5  feeling irritated.  (AR 32.)  He had a lot of bloating and bad painful gas that would last about two

6  hours.  (AR 32.)  Then he would get pains in the middle of his stomach and into his lower back.

7  (AR 32.)  The pain would move from his back to this sides and then to his bellybutton.  (AR 32-

8  33.)  Plaintiff would need to have a bowel movement and it would be painful.  (AR 33.)  It would

9  take two to three hours to use the restroom.  (AR 33.)  Plaintiff's stomach would feel shaky and

10  he would be very tired and he would get a headache.  (AR 33.)

11       Plaintiff was afraid to eat because he might get nauseated.  (AR 33.)  He did not want to

12  throw up or have diarrhea.  (AR 33.)  Prior to getting on medication, Plaintiff's father would

13  have to take him to the emergency room because of the pain.  (AR 33.)  Plaintiff now takes pain

14  medication when he gets the bad side pressure pain.  (AR 33.)  Even with the medication,

15  Plaintiff still has bad symptoms and feels horrible the next day.  (AR 33-34.)  Plaintiff still has

16  pain and is in the restroom for two to three hours.  (AR 34.)

17       Plaintiff never liked to work the afternoon shift because he would be afraid to eat and

18  would get hungry.  (AR 34.)  Even though he is no longer working, Plaintiff still experiences the

19  same morning pattern as before.  (AR 34.)  Plaintiff never has a good day.  (AR 34.)  On his

20  worse days, Plaintiff will not leave the house.  (AR 35.)  He is afraid to go anywhere, does not

21  like to go anywhere.  (AR 35.)  Plaintiff does not like going to the hospital because of his surgery

22  at a young age.  (AR 35.)

23       Plaintiff is taking seven medications to try to ease his pain and suffering.  (AR 35.)

24  Plaintiff takes medication for pain, anxiety, nausea, to help his stomach, depression, and to help

25  him sleep.  (AR 35-36.)  Plaintiff is most comfortable lying down or sitting on the couch

26  watching television.  (AR 36.)  Plaintiff sometimes goes to the movies.  (AR 36.)  Plaintiff

27  watches television and sometimes reads.  (AR 37.)  Plaintiff tries to get out of the house at least

28  two to three days per week.  (AR 37.)  Sometimes he will just go sit outside.  (AR 37.)

1    Plaintiff does not like to go to restaurants because he finds it traumatizing.  (AR 38.)  He

2    feels traumatized if he even puts a foot on a school campus.  (AR 38.)  He hates going to doctor's

3    appointments, having the same examinations over and over.  (AR 38.)  Plaintiff has nightmares

4    of being back at school, working at his old job.  (AR 38.)

5    Plaintiff used to have friends but once he was broke and sick all the time they went their

6    own way.  (AR 38.)  Plaintiff may have friends but they do not see him and he does not go out

7    with them.  (AR 38.)

8    Plaintiff lays down for at least an hour or two watching television but will sit also.  (AR

9    39.)  Plaintiff sits about twenty percent of the day.  (AR 39.)  Plaintiff can only walk a short

10   distance.  (AR 37.)  He will go to the movie theater, to the mall to buy a book, and would be able

11   to walk a lap on a track.  (AR 37.)  He can stand about five minutes.  (AR 39.)  He does not like

12   to stand more than five minutes.  (AR 40.)  Plaintiff can lift five to ten pounds.  (AR 40.)

13   Cheryl Chandler, a vocational expert ("VE"), also testified at the hearing.  (AR 40-44.)

14   The VE classified Plaintiff's past work experience as dining room attendant, DOT 311.677-018,

15   unskilled, SVP 2, medium exertion level; and cook's helper, DOT 317.687-010, unskilled, SVP

16   2, medium exertion level.  (AR 42.)

17   The ALJ proffered a hypothetical of an individual with Plaintiff's age, education and

18   work experience who could perform light physical exertion but is limited to performing simple,

19   repetitive tasks without public contact.  (AR 42.)  The VE opined that this individual would not

20   be able to perform Plaintiff's previous jobs.  (AR 42.)  This individual would be able to work as

21   a garment sorter, DOT 222.687-014, unskilled, SVP 2, light, with 21,500 jobs in California;

22   machine operator, DOT 363.686-010, unskilled, SVP 2, light, with 3,300 jobs in California; and

23   garment bagger, DOT 920.687-018, unskilled, SVP 1, light, with 45,000 jobs in California.  (AR

24   42-43.)  Nine times the numbers would be representative of the jobs in the nation.  (AR 43.)

25   The ALJ proffered a hypothetical of an individual of Plaintiff's age, education, and work

26   experience who can lift and carry ten pounds, stand and walk from two to three hours in an eight

27   hour day, and sit two to three hours in an eight hour day.  (AR 43.)  The VE opined there would

28   be no jobs for this individual.  (AR 43.)

1    The ALJ proffered a third hypothetical of an individual with Plaintiff's age, education
2  and work experience who would require additional unscheduled breaks in the workday totaling
3  one to two hours in addition to the customary two breaks and a meal period.  (AR 43.)  The VE
4  opined there would be no jobs for this individual.  (AR 43.)

5    Counsel proffered a hypothetical of the same individual in the first hypothetical who
6  would be off task at least twenty percent of the day due to pain or breaks.  (AR 43.)  The VE
7  opined there would be no jobs for this individual.  (AR 43.)

8    Plaintiff's father, Richard Valenzuela, testified at the hearing.  (AR 44-49.)  Plaintiff has
9  been living with his father for the past five years.  (AR 45.)  Plaintiff sleeps because it creates
10  stomach problems if he gets up early.  (AR 45.)  Mr. Valenzuela leaves him alone in the
11  mornings.  (AR 45.)  If Mr. Valenzuela tries to get him up early he ends up getting sick to his
12  stomach and getting diarrhea.  (AR 46.)  The medication that Plaintiff takes gives him relief from
13  the diarrhea, but it does not eliminate the problem because he gets pain from being disturbed or
14  concentration.  (AR 46.)  If he gets up early, he can last an hour and then the pain and diarrhea
15  start again.  (AR 46.)

16    Plaintiff has seen specialists.  (AR 46.)  Mr. Valenzuela took him to UCLA Medical
17  Center to see if they could discover the problem, but he could not continue taking him because of
18  insurance and funds.  (AR 46.)  Plaintiff has attempted to go to college and the same thing
19  happened to him when he was in school.  (AR 46.)  He would have to go to the bathroom, the
20  pains would start and he missed a lot of school.  (AR 46.)  He failed college because he could not
21  continue.  (AR 46.)  He tried online college but he could not keep up with it.  (AR 46.)

22    When Plaintiff is stressed it causes him to have pain.  (AR 46.)  Mr. Valenzuela is
23  worried that his son will have the same problem that he had when he picked him up from school.
24  (AR 46.)  His intestines were leaking.  (AR 46.)

25    Plaintiff tried working but they fired him because he was in the bathroom all the time.
26  (AR 47.)  Mr. Valenzuela was getting exhausted but he did not give up on Plaintiff.  (AR 47.)
27  Mr. Valenzuela does not see any change other than the medications that Dr. Elias started Plaintiff
28  on to relieve his pain.  (AR 47.)  When the pain is relieved, Plaintiff does not have the diarrhea.

1    (AR 47.)  Then his time in the bathroom is a two hour minimum per day.  (AR 47.)

2         Mr. Valenzuela has tried to motivate his son but has discovered it just is not there.  (AR

3    47.)  No one has found a cure for his stomach problem and continuous diarrhea.  (AR 47.)  The

4    specialist at UCLA in 2008 was onto something but they ran out of funds.  (AR 47.)  Dr. Elias is

5    the first doctor that suggested medication for the pain.  (AR 48.)  They used to take Plaintiff to

6    the emergency room and he would get relief for three to four days.  (AR 48.)  Then they found a

7    doctor who was interested in helping Plaintiff and suggested medication.  (AR 48.)

8         Every time that Plaintiff gets a girlfriend they end up leaving him because they do not

9    want to be with someone who is sick all the time.  (AR 48.)  He has to go to the bathroom all the

10   time or he cannot take them out because he is sick.  (AR 48.)  Plaintiff has been going through

11   the stomach issues for fifteen years.  (AR 49.)  Plaintiff has developed hiccups that last for four

12   to five days.  (AR 49.)  Plaintiff will not last if he tries to work.  (AR 49.)

13   **B.    ALJ Findings**

14   The ALJ made the following findings of fact and conclusions of law.

15   • Plaintiff meets the insured status requirements of the Social Security Act though

16       December 31, 2012.

17   • Plaintiff has not engaged in sustained gainful activity since the alleged onset date of May

18       9, 2011.

19   • Plaintiff has the following severe impairments: colonic perforation status post repair and

20       partial colectomy, depressive disorder, and anxiety disorder.

21   • Plaintiff does not have an impairment or combination of impairments that meet or equal

22       one of the listed impairments.

23   • Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and

24       10 pounds frequently; stand and walk for 6 hours; sit for 6 hours; and can perform simple

25       repetitive tasks without public contact.

26   • Plaintiff cannot perform any past relevant work.

27   • Plaintiff was born on April 27, 1982, and was 29 years old, which is defined as a younger

28       individual on the alleged disability onset date.

- Plaintiff has at least a high school education and can communicate in English.
- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.
- Plaintiff's age, education, work experience, and residual functional capacity allow him to perform jobs that exist in significant numbers in the national economy.
- Plaintiff has not been under a disability as defined in the Social Security Act from May 9, 2011, though the date of this decision.

(AR 12-18.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that

exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Initially, Plaintiff's counsel is admonished for failure to comply with the requirements of the scheduling order issued in this action. Counsel is directed to paragraph 11 of the scheduling order which sets forth the requirements for the opening brief in a Social Security action. (ECF No. 6.) Any further filings by counsel in this district should comply with the orders issued in the action.

1    While Plaintiff sets forth four sections of alleged error, the sections themselves raise

2  multiple alleged errors.  Therefore, the Court has identified the following specific errors alleged

3  in this appeal.

4       **A.    Current Medical Records**

5    Plaintiff submits current records to "update and further substantiate the scope and nature"

6  of his impairments.  Defendants respond that Plaintiff has not shown this evidence is material or

7  probative as to Plaintiffs condition two year's prior when the ALJ issued his decision.

8    The Social Security regulations allow a claimant to submit new and material evidence for

9  the appeals counsel to consider in determining whether to review the ALJ's decision as long as

10  the evidence relates to the period on or before the ALJ's decision.  Brewes v. Comm'r of Soc.

11  Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970(b)).  "[T]his new

12  evidence must be treated as part of the administrative record."   Brewes, 682 F.3d at 1162

13  (quoting Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996)).  Therefore, the district court must

14  consider the new evidence submitted to the appeals counsel when reviewing the final decision

15  for substantial evidence.  Brewes, 682 F.3d. at 1162.

16    In this situation, Plaintiff is seeking for this court to review evidence that was not

17  submitted during the administrative proceedings.  The submission of new evidence to the trial

18  court is governed by 42 U.S.C. § 405(g) which requires the claimant to show that the new

19  evidence is material and there was good cause for the failure to incorporate the evidence into the

20  record in the prior proceeding.  Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380

21  (9th Cir. 1984).  Good cause is established where the material was unavailable earlier.  Mayes v.

22  Massanari, 276 F.3d 453, 463 (9th Cir. 2001).

23    "To be material under section 405(g), the new evidence must bear 'directly and

24  substantially on the matter in dispute.' "  Mayes, 276 F.3d at 462 (quoting Ward v. Schweiker,

25  686 F.2d 762, 764 (9th Cir.1982)).  Further, new evidence requires remand "only where there is

26  a reasonable possibility that the new evidence would have changed the outcome of the

27  Secretary's determination had it been before him."  Booz, 734 F.2d at 1380 (quoting Dorsey v.

28  Heckler, 702 F.2d 597, 604–605 (5th Cir.1983)).

1       Here, Plaintiff has failed to address whether there is good cause for the failure to present

2  the new evidence in the administrative proceedings.  However, the Court notes that the records at

3  issue were all created after the Appeals Council denied Plaintiff's request for review on

4  December 24, 2014.  Specifically, Plaintiff seeks to have this Court consider evidence of medical

5  records created on November 14, 2015, through November 24, 2015 which provide a new

6  diagnosis of diverticulitis for Plaintiff (ECF No. 27-1); and February 12, 2016, where Plaintiff

7  had a colonic perforation due to the diverticulitis (ECF No. 27-2).  As these records do not relate

8  to the time period at issue here, and address Plaintiff's medical condition more than two years

9  after the decision in this action issued, the records are not material to the matters in dispute in

10  this action.  To the extent that they may support a worsening of Plaintiff's condition after the

11  decision issued in this action, Plaintiff would be required to file a new claim for benefits.

**B.     Plaintiff's Credibility**

13       Plaintiff contends that the ALJ used boilerplate language to find that he was not credible.

14  Plaintiff also alleges that the ALJ erred in finding that his daily activities were inconsistent with

15  his complaints of disabling symptoms and limitations.  Defendant counters that the ALJ noted

16  that Plaintiff put forth poor effort during his examination with Dr. Murphy and the evidence of

17  malingering alone is sufficient to support the adverse credibility finding.  Additionally, the ALJ

18  found there was a lack of objective evidence supporting Plaintiff's subjective complaints.

19  Finally, Defendants argue that the ALJ found that Plaintiff's daily activities are inconsistent with

20  his allegations of disabling depression and intestinal complaints.

21       "An ALJ is not required to believe every allegation of disabling pain or other non-

22  exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

23  and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

24  symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674

25  F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented

26  objective medical evidence of an underlying impairment which could reasonably be expected to

27  produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

28  Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

1   show that his impairment could be expected to cause the severity of the symptoms that are

2   alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80

3   F.3d at 1282.

4          Second, if the first test is met and there is no evidence of malingering, the ALJ can only

5   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

6   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

7   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that

8   support this conclusion and the findings must be sufficiently specific to allow a reviewing court

9   to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

10  arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

11  2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a

12  claimant's subjective pain and symptom testimony include the claimant's daily activities; the

13  location, duration, intensity and frequency of the pain or symptoms; factors that cause or

14  aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

15  measures or treatment used for relief; functional restrictions; and other relevant factors.

16  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ

17  may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's

18  reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

19  by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained

20  failure to seek treatment or to follow a prescribed course of treatment. . . ."  Tommasetti v.

21  Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

22         1.     July 3, 2011 Function Report

23         Plaintiff completed a function report on July 3, 2011.  (AR 318-324.)  Plaintiff stated he

24  wakes up in the morning and stays in bed because he never feels good in the morning.  (AR 318.)

25  Plaintiff has to use the bathroom because he has painful gas that needs to be expelled and then he

26  goes back to bed until he feels better.  (AR 318.)  If Plaintiff's stomach feels up to it he will eat

27  something bland, like soup, fruit, or a salad.  (AR 318.)  If Plaintiff is not feeling sick, he will

28  watch television.  (AR 318.)  If he gets sick from eating, Plaintiff will have to go to the bathroom

1  until the pains pass.  (AR 318.)  Plaintiff watches television until dinner time or will go out with

2  his father.  (AR 318.)  In the evening, Plaintiff plays video games.  (AR 318.)

3      Plaintiff has difficulty sleeping because his mind races, his stomach feels sick and he

4  feels like he will have diarrhea, has painful gas and pain in his left side.  (AR 319.)  Plaintiff has

5  to be reminded to keep proper hygiene.  (AR 320.)  Plaintiff prepares his own meals, can do

6  yardwork for about ten minutes before his symptoms start.  (AR 320.)  Plaintiff cleans up after

7  himself and takes out the trash.  (AR 320.)  Plaintiff goes outside to get fresh air or will go for a

8  ride in the car.  (AR 321.)  Plaintiff does not go out alone because he gets bad pains in his side

9  that requires him to sit down quickly.  (AR 321.)

10      Plaintiff drives, but is worried about getting a pain in his side or a diarrhea attack.  (AR

11  321.)  Plaintiff goes shopping but does not like to be in the store for more than thirty minutes.

12  (AR 321.)  Plaintiff is unable to handle money, but can count change.  (AR 321.)  Plaintiff's

13  hobbies are sleeping, watching television, playing video games, and reading for short periods of

14  time.  (AR 322.)  Plaintiff sleeps in late and plays video games whenever he can because he does

15  not sleep well.  (AR 322.)  Plaintiff watches television with his family and helps his nephew

16  read.  (AR 322.)  Plaintiff goes to church once a week and to Walmart.  (AR 322.)  Plaintiff has

17  someone drive him unless he knows he will be okay.  (AR 322.)  Plaintiff does not have

18  difficulty getting along with other people.  (AR 323.)  Plaintiff can walk for five minutes before

19  needing to rest, and can pay attention for five minutes.  (AR 323.)  Plaintiff does not start what

20  he finishes, he forgets what is said to him, has trouble keeping eye contact, and his mind is

21  always racing.  (AR 323.)

22      2.   Relevant July 26, 2013 Hearing Testimony

23      At the July 26, 2013 hearing, Plaintiff testified that in the morning, he wakes up with his

24  stomach feeling irritated.  (AR 32.)  He has a lot of bloating and bad painful gas that will last

25  about two hours.  (AR 32.)  Then he gets pains in the middle of his stomach and into his lower

26  back.  (AR 32.)  The pain moves from his back to this sides and then to his bellybutton.  (AR 32-

27  33.)  Plaintiff needs to have a bowel movement and it is painful.  (AR 33.)  It takes two to three

28  hours to use the restroom.  (AR 33.)  Plaintiff's stomach feels shaky and he is very tired and gets

a headache.  (AR 33.)

Plaintiff is afraid to eat because he might get nauseated.  (AR 33.)  He does not want to throw up or have diarrhea.  (AR 33.)  Prior to getting on medication, Plaintiff's father would have to take him to the emergency room because of the pain.  (AR 33.)  Plaintiff now takes pain medication when he gets the bad side pressure pain.  (AR 33.)  Even with the medication, Plaintiff still has bad symptoms and feels horrible the next day.  (AR 33-34.)  Plaintiff still has pain and is in the restroom for two to three hours.  (AR 34.)  Plaintiff never has a good day.  (AR 34.)  On his worse days, Plaintiff will not leave the house.  (AR 35.)

Plaintiff is afraid to go anywhere, and does not like to go anywhere.  (AR 35.)  Plaintiff is most comfortable lying down or sitting on the couch watching television.  (AR 36.)  Plaintiff sometimes goes to the movies.  (AR 36.)  Plaintiff watches television and sometimes reads.  (AR 37.)  Plaintiff tries to get out of the house at least two to three days per week.  (AR 37.)  Sometimes he will just go sit outside.  (AR 37.)  Plaintiff does not like to go to restaurants because he finds it traumatizing.  (AR 38.)  He feels traumatized if he even puts a foot on a school campus.  (AR 38.)  He hates going to doctor's appointments, and having the same examinations over and over.  (AR 38.)  Plaintiff has nightmares of being back at school, and working at his old job.  (AR 38.)

Plaintiff lays down for at least an hour or two watching television but will sit also.  (AR 39.)  Plaintiff sits about twenty percent of the day.  (AR 39.)  Plaintiff can only walk a short distance.  (AR 37.)  He will go to the movie theater, to the mall to buy a book, and would be able to walk a lap on a track.  (AR 37.)  He can stand about five minutes.  (AR 39.)  He does not like to stand more than five minutes.  (AR 40.)  Plaintiff can lift five to ten pounds.  (AR 40.)

   3.   Substantial Evidence Supports the Finding that Plaintiff is Not Credible

While Plaintiff is correct that the ALJ may not rely on boilerplate language to discredit his testimony, Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014), that is not the situation confronted here.  While ALJs typically makes such boilerplate statements, they must then set forth the discussion of the evidence and the reason upon which the adverse credibility determination is based.  Treichler, 775 F.3d at 1103 (quoting 42 U.S.C. §

405(b)(1)).  In this instance, the ALJ provided numerous reasons to find Plaintiff's testimony not credible.

In addressing Plaintiff's credibility, the ALJ discussed the opinion of Dr. Murphy.  (AR 16.)  Dr. Murphy opined:

> This is a 29 year old English speaking male who graduated from high school with a diploma and was not in special education classes for a learning disability.  After high school he sporadically attended college for two years.  He then worked for four years at a Taco Bell before being fired for not following protocol.  During the mental status portion of my interview with Mr. Valenzuela he answered all the questions correctly and without hesitation.  He did appear lethargic as if he was under the influence of some mood altering drug but when questioned about this observation he denied using anything.  He did say that in the morning he did take one pain pill but that it should not slow his thinking.  His demeanor was slow, he kept his face down and his hand over his eyes.  He never looked up or directly at this clinician.  His test taking attitude was poor and he averaged 15 seconds or more per number to connect twenty five numbers.  This claimant made no discernable effort on the speed tests and scored so slow that the scores showed he suffers from Mental Retardation which he clearly does not.  **His test scores are not representative of his skills and abilities because they do not reflect his abilities.**  This individual is on Doxepin 10mg qhs for sleep (The normal dosage for this medication starts at 100mg, so this a very low dose and of little value).  Clonazepam 1mg prn (for anxiety and sleep) and Celexa 40mg for depression.  He has never been hospitalized for psychiatric reasons or attempted suicide.  This clinician may have observed symptoms of a Depressive Disorder but when questioned about symptoms he did not have the symptom criteria for depression that is set out in the DSM-IV-TR.  The claimant did endorse psychiatric problems in his history.
>
> **This individual is capable of performing Repetitive Skilled Tasks (RST) on a regular basis.**

(AR 408-409 (emphasis in original).)

Dr. Murphy provided the following functional capacity evaluation:

(A) It is this clinician's professional opinion that this claimant **does not** have restrictions concerning daily activities. (Level of Intelligence is questionable).
(B) It is this clinician's professional opinion that this claimant **does not** have difficulty maintaining social functioning.
(C) This claimant **does not** appear to have problems with concentration, persistence and pace that could jeopardize his ability to work.
(D) It is this clinician's professional opinion that this claimant **would not** experience episodes of emotional deterioration in work like situations.
(1) It is this clinician's professional opinion that this claimant **has no difficulty** understanding, carrying out, and remembering simple instructions.
(2) It is this clinician's professional opinion that this claimant **will not** have difficulty responding appropriately to co-workers, supervisors and the public.
(3) It is this clinician's professional opinion that this claimant **will not** have difficulty responding appropriately to usual work situations.
(4) It is this clinician's professional opinion that this claimant **will not** have difficulty dealing appropriately with changes in routine work settings.

(5) It is this clinician's professional opinion that this claimant **does** have other limitations due to mental impairment. (depression by history and possible Level of Intelligence)

**This individual is capable of performing Simple Repetitive Tasks (SRT) on a regular basis.**

(AR 409 (emphasis in original).)

Plaintiff was diagnosed with depressive disorder, NOS by history; anxiety disorder, NOS by history, R/O malingering, R/O mild retardation, and a Global Assessment Function of 60. (AR 409.)  Dr. Murphy's summary states:

> Mr. Valenzuela appears to be having a difficult time in his life.  His test scores for intelligence were at the Mild Mental Retardation Level but nothing in his behavior, physically or mentally support this finding.  His memory scores appeared to support those scores.  He appears to not have difficulty handling everyday activities of daily living: such as bathing, eating meals, and socializing.
>
> He had no difficulty understanding what was asked of him concerning the various tasks during the mental status examination.  He did not demonstrate difficulties understanding the simple instructions of the various tasks, confidentiality, and the reason for the examination.  There were some psychological impairments noted and he did not endorse psychological problems as part of his history.[2]  He appeared to understand and follow simple, basic instructions without difficulty.  He was able to sit for over two hours without a break and did not compliant of physical or mental discomfort.  He will not require assistance in terms of handling his money if he were to be granted benefits.

(AR 410.)

In his physical consultative examination, Dr. Stoltz also noted that Plaintiff gave poor effort on grip strength.  (AR 15, 400.)  The evidence of malingering is sufficient to support the adverse credibility finding.  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  As the ALJ here noted malingering, the Court does not find Kilbourne v. Comm'r of Soc. Sec., No. CIV. 09-6367-HA, 2011 WL 1357330 (D. Or. Apr. 11, 2011), to be persuasive authority as argued by Plaintiff.

The ALJ also provided other clear and convincing reasons to support the adverse credibility finding.  The ALJ noted that Plaintiff had stated in his disability reports that there were no changes in his condition and that he had no new physical or mental limitations.  (AR 16.)  On December 20, 2011, Plaintiff submitted a disability report.  (AR 351-355.)  Plaintiff's

---

[2] The Court notes this appears to be a typographical error and assumes that the statement was meant to state that Plaintiff did endorse psychological problems as part of his history.

1  last report had been submitted on June 17, 2011.  (AR 351.)  Although Plaintiff has testified that

2  his condition is worsening, in this report he stated there had been no change for better or worse

3  in his condition since the last disability report and he had no new physical or mental limitations.

4  (AR 351.)  In his report dated June 25, 2012, Plaintiff stated there had been no change in his

5  condition and identified new physical limitations due to an injury to his leg and swelling of his

6  hands.  (AR 359-363.)  The ALJ may properly consider Plaintiff's inconsistent statements in

7  making the credibility determination.  Tommasetti, 533 F.3d at 1039.

8      The ALJ considered Plaintiff's daily activities.  There are two ways for an ALJ to "use

9  daily activities to form the basis of an adverse credibility determination: if the claimant's activity

10  contradicts his testimony or if the claimant's activity meets the threshold for transferable work

11  skills."  Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).  Here, the ALJ found that

12  Plaintiff's daily activities contradict his testimony regarding the severity of his symptoms and his

13  limitations.  (AR 16.)  Plaintiff alleges that he can only pay attention for five minutes and can

14  only walk for five minutes, but he watches television, plays video games, drives, goes to church,

15  goes to the movies, reads, and goes shopping.  (AR 16, 37, 39, 40, 318, 321, 322, 323.)

16      The ALJ also found that the medical evidence did not support Plaintiff's severe

17  symptoms.  (AR 14.)  Plaintiff alleged difficulties with concentration, memory, understanding,

18  and following instructions.  (AR 16, 323.)  However, Dr. Vicary found Plaintiff had a fair ability

19  to understand, remember and carry out very short and simple instructions.  (AR 14, 388.)  Dr.

20  Murphy found Plaintiff had no difficulty understanding, carrying out, and remembering simple

21  instructions.  (AR 15, 405-406.)  Plaintiff alleges disabling depression and an inability to sleep,

22  but the recent medical record demonstrated that Plaintiff denied depression and problems

23  sleeping.  (AR 432, 493.)

24      Plaintiff alleged that he has difficulty lifting, squatting, bending, standing, reaching,

25  walking, sitting, kneeling, stair-climbing, and using his hands.  (AR 16, 342.)  But the medical

26  record demonstrates full range of motion and muscle strength with no physical limitations.  (AR

27  15, 392, 401-403, 433.)  While the ALJ may not reject Plaintiff's symptom testimony solely on

28  the basis that it is not supported by objective medical evidence, the ALJ may consider the

1  physician testimony regarding the nature, severity and effect of the symptoms of which Plaintiff

2  complains.  Thomas, 278 F.3d at 959.

3         The ALJ gave legally sufficient reasons which have substantial support in the record for

4  the finding that Plaintiff's testimony regarding the severity of his symptoms and limitations was

5  not credible.

6         **C.     Res Judicata**

7         Plaintiff contends that the ALJ erred by determining that res judicata applies because he

8  showed that his symptoms have worsened by the opinion of Dr. Vicary and his father's

9  testimony.  Defendant replies that the ALJ correctly found that Plaintiff had not rebutted the

10  presumption of nondisability by showing changed circumstances.

11        The prior decision denied on September 21, 2010, for which the Appeals counsel denied

12  review on May 9, 2011, is final and binding.  20 C.F.R. ¶ 404.905; Chavez v. Bowen, 8444 F.2d

13  691, 692 (1988).  The doctrine of res judicata applies in administrative proceedings, although it

14  is less rigidly applied to administrative proceedings.  Chavez, 844 F.2d at 693.

15        The Ninth Circuit has held that a finding that the claimant is not disabled creates a

16  presumption that the claimant continues to be able to work after that date.  Lester v. Chater, 81

17  F.3d 821, 827 (9th Cir. 1995).  The prior finding that the claimant was not disabled cannot be re-

18  litigated through date of the prior decision.  Giancola v. Colvin, 31 F.Supp.3d 1215, 1220-21

19  (E.D. Wash. 2014).  "[I]n order to overcome the presumption of continuing nondisability arising

20  from the first administrative law judge's findings of nondisability, [a claimant] must prove

21  'changed circumstances' indicating a greater disability."  Chavez, 844 F.2d at 693 (quoting

22  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985)).  This can be done by showing a worsening

23  of symptoms or other changes such as the existence of a new impairment not considered in the

24  previous application or a change in the claimant's age category.  Lester, 81 F.3d at 827.  The

25  burden of proof is on the claimant to show that he is disabled and on a subsequent application for

26  benefits the claimant has the burden of rebutting the presumption of continuing nondisability.

27  Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568 (9th Cir. 1983).

28        The presumption that Plaintiff is not disabled arises in this action.  Therefore, in

1  adjudicating a subsequent claim, the ALJ applies the presumption of continuing nondisability

2  and will determine that the claimant is not disabled unless the claimant rebuts the presumption

3  by showing changed circumstances with respect to the unadjudicated period.   Acquiescence

4  Ruling 97-4(9), 1997 WL 742758 (1997).  If the presumption is rebutted, the ALJ must give

5  effect to certain findings made in the prior final decision by the ALJ.  Id.

6         In the prior decision, the ALJ found that Plaintiff had irritable bowel syndrome.  (AR 74.)

7  The relevant period for the current application for benefits is from September 21, 2010 through

8  the date of the decision, August 9, 2013.  (AR 19.)

9         1.     Third Party Testimony

10         Plaintiff contends that ALJ erred by disregarding his father's testimony because it was

11  not quantified.   Further, Plaintiff contends that if the testimony did not quantify Plaintiff's

12  limitations the ALJ had a duty to further develop the record.  Defendant argues that the ALJ gave

13  reasons germane to the testimony of Plaintiff's father to reject his testimony.

14         The ALJ considered the testimony of Plaintiff's father.  (AR 16-17.)  Plaintiff's father

15  completed a third party function report on July 3, 2011.  (AR 310-317.)  Plaintiff prepares his

16  own meals, cleans his room, takes out the garbage, and goes shopping two to three times per

17  month. (AR 312-313.)  Plaintiff is able to handle his own money.  (AR 313.)  Plaintiff's hobbies

18  are reading, watching television, and playing video games.  (AR 314.)  Plaintiff reads for five to

19  ten minutes and watches television on and off for thirty to sixty minutes.  (AR 314.)  Plaintiff

20  watches television with his family and helps his nephew with his reading.  (AR 314.)  Plaintiff

21  attends church on a regular basis.  (AR 314.)  Plaintiff has no problems getting along with

22  people.  (AR 315.)  Plaintiff can lift no more than twenty to thirty pounds, can walk for five

23  minutes, pay attention for five minutes, and has difficulty finishing things.  (AR 315.)  Plaintiff

24  takes a while to comprehend things and instructions have to be repeated to him because he

25  forgets.  (AR 315.)  Plaintiff gets along well with authority figures.  (AR 315.)  Stress causes

26  Plaintiff to have pain.  (AR 316.)  Plaintiff is very concerned regarding when he might have to

27  use the restroom which limits his activities.  (AR 310-316.)

28         The ALJ noted that Plaintiff's father did not quantify the limitations stated, other than to

1  state that Plaintiff could only lift twenty to thirty pounds, concentrate for five minutes, and walk

2  for five minutes at a time.  (AR 16.)  The ALJ gave little weight to the stated limitations because

3  they were not consistent with the other evidence of record.  (AR 16.)

4        The reasons discussed previously in rejecting Plaintiff's statement of his limitations are

5  equally applicable to his father's stated limitations.  Plaintiff's father alleged that Plaintiff has

6  difficulty lifting, standing, walking, and stair-climbing.  (AR 16, 315.)  But the medical record

7  demonstrates full range of motion and muscle strength with no physical limitations.  (AR 15,

8  392, 401-403, 433.)  Plaintiff's father also stated that Plaintiff has difficulty understanding and

9  concentrating.  (AR 315.)  However, Dr. Murphy found Plaintiff had no difficulty understanding,

10  carrying out, and remembering simple instructions.  (AR 15, 405-406.)

11        The Court finds no merit to Plaintiff's argument that the ALJ was required to further

12  develop the record.  The ALJ has a duty to further develop the record where the evidence is

13  ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

14  evidence.  Mayes, 276 F.3d at 459-60; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

15  2001).  Neither of these situations is presented here.  Further, the facts in this case are not similar

16  to other instances in which the ALJ was found to have a duty to further develop the record.  See

17  Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated

18  more information was needed to make diagnosis); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir.

19  2010) (ALJ erred by failing to obtain disability determination from the Veteran's

20  Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred

21  where failed to determine if claimants benefits were property terminated or should have been

22  resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D.

23  Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician

24  who recognized he did not have sufficient information to make a diagnosis).

25        The ALJ's provided a germane reason to give little weight to the limitations stated by

26  Plaintiff's father.

27        2.    Dr. Vicary's Opinion

28        Plaintiff alleges that the ALJ erred by failing to discuss Dr. Vicary's opinion in any

1  relevant way.  Plaintiff contends that Dr. Vicary's opinion, as Plaintiff's treating physician,

2  should have been given controlling weight and the ALJ erred by not giving weight to the opinion

3  due to the short term of treatment.  Defendant counters that the ALJ provided reasons that are

4  supported by substantial evidence to assign greater weight to the opinion of Dr. Murphy.

5       The weight to be given to medical opinions depends upon whether the opinion is

6  proffered by a treating, examining, or non-examining professional.  See Lester, 81 F.3d at 830-

7  831.  In general a treating physician's opinion is entitled to greater weight than that of a

8  nontreating physician because "he is employed to cure and has a greater opportunity to know and

9  observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995)

10  (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be

11  rejected only for "specific and legitimate reasons" supported by substantial evidence in the

12  record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless

13  v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

14       Where the treating physician's opinion is contradicted by the opinion of an examining

15  physician who based the opinion upon independent clinical findings that differ from those of the

16  treating physician, the nontreating source itself may be substance evidence, and the ALJ is to

17  resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

18  is based upon clinical findings considered by the treating physician, the ALJ must give specific

19  and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

20  evidence in the record.  Andrews, 53 F.3d at 1041.

21       The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

22  specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

23  may constitute substantial evidence when it is consistent with other independent evidence in the

24  record."  Tonapetyan, 242 F.3d at 1149.  The ALJ need not accept the opinion of any physician

25  that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

26       The ALJ considered that Plaintiff had a history of an exploratory laparotomy with repair

27  of a sigmoid colon perforation in 1998.  (AR 14.)  In June 2008, Dr. Weinstein opined that

28  Plaintiff was permanently unable to work due to chronic abdominal pain and intermittent visits to

1   the emergency room.   (AR 14.)   In December 2010, Dr. Elia opined that Plaintiff was
2   temporarily unable to work until January 2012, due to chronic abdominal pain, major depression
3   with anxiety, and avoidant personality traits.  (AR 14.)

4        In July 2011, Dr. Vicary opined that Plaintiff had a poor ability to understand and
5   remember detailed instructions, attend and concentrate, work without supervision, interact with
6   the public, co-workers, and supervisors, or adapt to changes in the workplace.  (AR 14.)  Plaintiff
7   had a fair ability to understand, remember, and carry out very short and simple instructions, be
8   aware of normal hazards and react appropriately, and use public transportation or travel to
9   unfamiliar places.  (AR 14.)  The ALJ noted that the record demonstrates that Dr. Vicary only
10  saw Plaintiff twice between November 2010 and July 2011.  (AR 14.)  Dr. Vicary indicated that
11  Plaintiff was obsessed with his gastrointestinal symptoms.  (AR 14.)  The ALJ gave little weight
12  to the opinion of Dr. Vicary because he had not seen Plaintiff long enough to develop a
13  longitudinal picture of his impairment.  (AR 14.)

14       "If a treating physician's opinion is 'well-supported by medically acceptable clinical and
15  laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in
16  [the] case record, [it will be given] controlling weight.' "  Orn, 495 F.3d at 631 (quoting 20
17  C.F.R. § 404.1527(d)(2).)  However, "[i]f a treating physician's opinion is not given 'controlling
18  weight' because it is not 'well-supported' or because it is inconsistent with other substantial
19  evidence in the record, the Administration considers specified factors in determining the weight
20  it will be given.   Those factors include the '[l]ength of the treatment relationship and the
21  frequency of examination' by the treating physician; and the 'nature and extent of the treatment
22  relationship' between the patient and the treating physician."  Orn, 495 F.3d at 631 (quoting 20
23  C.F.R. § 404.1527(d)(2)(i)-(ii)).   The ALJ properly considered that Plaintiff had only seen Dr.
24  Vicary on two occasions and gave more weight to the contradictory opinion of Dr. Murphy.

25       Dr. Murphy conducted a Psychological Evaluation on September 19, 2011.  (AR 405-
26  410.)   The record notes that Dr. Murphy's session with Plaintiff lasted approximately three
27  hours.  (AR 406.)  Dr. Murphy found that Plaintiff's attention was within normal limits; and he
28  was oriented to person, place and time.  (AR 406.)  Plaintiff's memory was intact for short term

and remote recall.  (AR 406.)  Plaintiff's eye contact was very poor and facial expression was non-responsive; and his attitude was guarded and sullen.  (AR 406.)  Plaintiff described his mood as "sour" and his emotional expression was congruent with his reported mood.  (AR 406.)  Flow of speech was normal for rate, rhythm, and tone; thoughts were clear, coherent, well organized, goal directed, and relevant to the subject at hand.  (AR 406.)  Plaintiff was able to handle ideas well, and could identify basic similarities, differences, and absurdities.  (AR 406.)

Plaintiff denied auditory, visual, olfactory, gustatory or tactile hallucinations and none were observed.  (AR 406.)  Plaintiff did not appear to be distracted by internal stimuli and did not endorse delusional material.  (AR 406.)  Plaintiff's insight, judgment, and motivation were appropriate; and his general fund of knowledge was adequate.  (AR 406.)

Plaintiff was given a Comprehensive Trail Making Test in which his scores fell mostly in the Severely Impaired Range; Bender Visual Motor Gestalt Test in which his performance was in the Low Average to Low Range; and Wechsler Adult Scale Intelligence Scale in which his scores placed Plaintiff in Mild Mental Retardation Level of Intelligence.  (AR 407.)  Dr. Murphy opined that this was not reflective of Plaintiff's level of intelligence.  (AR 407.)  Plaintiff's processing speed was quite low and he averaged one mark per every 15 seconds which is below the believable level of someone who graduated from high school, attended two years of college and just renewed his driver's license.  (AR 407.)  Dr. Murphy opined that the results of these scores should be interpreted with considerable caution.  (AR 407.)  Plaintiff's Wechsler Memory Scale scores were all in the Severely Impaired Range.  (AR 408).

As discussed above at IV.B.3, Dr. Murphy found that Plaintiff's test results did not represent his skills and abilities and returned results of so low that they indicated he suffers from mental retardation which he clearly does not.  (AR 408.)  Dr. Murphy found that Plaintiff's test taking attitude was poor and he made no discernable effort on the speed tests.  (AR 408.)  Further, Dr. Murphy noted that Plaintiff is on medication for sleep in which the normal dosage starts at 100mg, but Plaintiff is taking 10 mg which is so low it is of little value.  (AR 408.)  While Plaintiff was taking medication for depression, when questioned about his symptoms, Plaintiff did not have the symptom criteria for depression that is set out in the DSM-IV-TR.  (AR

408-409.)  Dr. Murphy noted that Plaintiff did not demonstrate difficulty understanding what was asked of him concerning the various tasks during the mental status examination.  (AR 410.) He did not demonstrate difficulty understanding the simple instructions of the various tasks, confidentiality, and the reasons for the evaluation.  (AR 410.)  Plaintiff was able to sit for over two hours without a break and did not complain of any physical or mental discomfort.  (AR 410.)

The ALJ also gave little weight to the opinions of the agency physicians.  (AR 15.)  On reconsideration, Dr. Wong reviewed the evidence submitted by Dr. Vicary and states the notes from Dr. Vicary contain no objective evidence; and Dr. Weinstein does not have any records. (AR 191.)

Dr. Ikawa completed an assessment.  Dr. Ikawa opined that Plaintiff had no restrictions in activities of daily living; mild difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace; and insufficient evidence of repeated episodes of decompensation.  (AR 192.)  While there is new evidence showing depression and anxiety with medication, it is not material to warrant a change in circumstances.  (AR 192.)  The record does establish anxiety and depression as medical diagnoses, but they are non-severe.  (AR 192.) Plaintiff's test results at the consultative examination are inconsistent with the forms completed by Plaintiff and his father.  (AR 192.)   The medical records show minimal evidence of symptoms, diagnosis, treatment, or medication.  (AR 192.)  Plaintiff's minimal symptoms appear to be controlled by medication.  (AR 192.)

Dr. Ikawa found that Dr. Vicary's opinion contained inconsistencies that render it less persuasive.  (AR 196.)  Despite an ongoing treatment relationship, visits have been too infrequent or sporadic to obtain a longitudinal picture of Plaintiff's impairment related to Plaintiff's limitations or restrictions.  (AR 196.)  Dr. Vicary's opinion contrasts sharply with other evidence in the record that makes it less persuasive.  (AR 196.)   Dr. Ikawa found no material change, and affirmed the ALJ's decision on May 18, 2012.  (AR 191.)

The ALJ found that Plaintiff had submitted evidence showing his impairments and limitations were actually more severe than they might have appeared at the time.  (AR 15-16.) The ALJ also found that the agency physicians did not adequately consider Plaintiff's subjective

1   complaints.  (AR 16.)

2   The ALJ properly evaluated the evidence of Plaintiff's medical impairments and

3   provided specific and legitimate reasons to reject Dr. Vicary's opinion that are supported by

4   substantial evidence in the record.

5           3.     <u>Presumption of NonDisability Was Rebutted</u>

6   Plaintiff contends that the ALJ erred by finding he did not rebut the presumption of non-

7   disability.  Defendant argues that the ALJ did not err by finding Plaintiff had not presented

8   evidence to rebut the presumption of continuing nondisability.  "[I]n order to overcome the

9   presumption of continuing nondisability arising from the first administrative law judge's findings

10  of nondisability, [a claimant] must prove 'changed circumstances' indicating a greater

11  disability." <u>Chavez</u>, 844 F.2d at 693.

12  In the September 21, 2010 opinion, the ALJ considered Plaintiff's allegations of mental

13  impairments and found that Plaintiff did not have a diagnosis of a psychological condition.  (AR

14  74.)  Relying on the opinions of the consultative examiner and the agency physicians, the ALJ

15  found that Plaintiff's mental impairment of depression caused minimal limitations.  (AR 74.)

16  The ALJ in the prior decision found no limitations in activities of daily living, the areas of

17  concentration, persistence, and pace, or in social functioning.  (AR 74.)  Plaintiff was found to

18  have no severe mental impairments.

19  In the current opinion, the ALJ found that Plaintiff has mild difficulties in activities of

20  daily living, and moderate difficulties in the areas of concentration, persistence, and pace, or in

21  social functioning.  (AR 13.).  The ALJ found severe impairments of depressive disorder and

22  anxiety disorder.  (AR 12.)  The ALJ considered the evidence in the record and stated, "The lack

23  of evidence supporting Mr. Valenzuela's subjective complaints, the tepid and ambiguous

24  conclusions of the consultative examiners, and the lack of support from any treating physician all

25  suggest to me that Mr. Valenzuela's condition has not changed materially since Judge Rogozen's

26  decision.  (AR 17.)  While Defendant argues that the ALJ did not err by finding that the

27

28

1  presumption of non-disability was not rebutted, it is not clear that the ALJ made such a finding.[3]

2  Although the ALJ found that Plaintiff's condition had not materially changed, he incorporated

3  the findings on Plaintiff's new mental limitations into Plaintiff's current residual functional

4  capacity and presented a hypothetical based upon these new limitations to the VE.

5      **D.    Progress Notes and Treatment from 2011 through 2013**

6      Plaintiff contends that the ALJ erred by neglecting to discuss in any relevant detail the

7  substantial treatment records of emergency room visits from 2011 through 2013.  However, the

8  ALJ need not discuss all evidence presented, but must explain why significantly probative

9  evidence has been rejected.  Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th

10  Cir. 1984).

11      The ALJ noted that Plaintiff has had multiple visits to the emergency room for

12  complaints of abdominal pain.  (AR 14.)  The record demonstrates that Plaintiff was seen on

13  January 6, 2011 and January 12, 2011 and had normal physical examinations.  (AR 394, 397.)

14  Plaintiff presented to the emergency room on January 26, 2011, but left without being seen.  (AR

15  442.)

16      On March 15, 2011, Plaintiff stated that his last episode of diarrhea had been two days

17  prior and he had a normal physical examination.  (AR 395.)

18      On August 25, 2011, Plaintiff presented to the emergency room complaining of

19  abdominal and epigastric pain.  (AR 390-392.)  Plaintiff stated that his pain was alieved with

20  Vicodin and worsened with bowel movements.  (AR 390.)  Plaintiff complained of nausea, but

21  no vomiting, and intermittent constipation with diarrhea.  (AR 390.)  He had a normal physical

22

---

23  [3] Even if the ALJ made a finding that Plaintiff had not rebutted the presumption of non-disability, any such error
    would be harmless as the ALJ presented the VE with a hypothetical based upon Plaintiff's current limitations and
24  made a finding that there were a significant number of jobs that Plaintiff could perform in the national economy
    based upon his mental and physical limitations.

25  The harmless error rule applies in Social Security cases.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).
    "The reviewing court can determine from the 'circumstances of the case' whether further administrative review is
26  necessary to determine whether there was prejudice from the error."  McLeod, 640 F.3d at 888.  Mere probability of
    error is not enough.  Id.  "But where the circumstances of the case show a substantial likelihood of prejudice,
27  remand is appropriate so that the agency can decide whether re-consideration is necessary.  By contrast, where
    harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate."  Id. (internal
28  punctuation and citations omitted).

1    examination.  (AR 392.)

2    On May 18, 2012, Plaintiff was seen with edema to his right calf after having fallen.  (AR

3    423.)  Plaintiff's physical examination was normal other than an enlarged right calf with a

4    palpable hematoma.  (AR 424.)  Plaintiff was seen on July 13, 2012, and reported that his pain

5    was well controlled with Vicodin and Tramadol.  (AR 430.)  Plaintiff reported that his calf pain

6    and swelling had improved.   (AR 430.)   Plaintiff complained of fever/chills, headache,

7    abdominal pain, muscle pain in his right lower leg and thigh, and anxiety.  (AR 432.)  Plaintiff

8    had a normal examination other than soft tissue swelling in his right calf.  (AR 433.)

9    On October 23, 2012, Plaintiff was seen complaining of on and off bloody diarrhea and

10   had a normal examination.  (AR 498, 506-507, 510.)

11   On February 12, 2013, Plaintiff was seen complaining of intermittent abdominal pain.

12   (AR 491.)  Plaintiff reported nausea and vomiting two weeks prior.  (AR 491.)  Plaintiff also

13   reported diarrhea two weeks prior that had resolved.  (AR 491.)  Plaintiff reported that he had

14   gained weight and had a good appetite.  (AR 491.)  Plaintiff had a normal physical examination.

15   (AR 493.)

16   Plaintiff fails to show how these records, which contain complaints of abdominal pain,

17   but demonstrate normal physical examinations, symptoms controlled with medication, and days

18   or weeks with no symptoms of diarrhea show a worsening of Plaintiff's condition.  The ALJ did

19   not err by failing to specifically address his sporadic emergency room visits.

20        **E.    Ability to Maintain Employment**

21   Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff is able to

22   maintain employment.  Plaintiff contends that the ALJ failed to consider whether Plaintiff can

23   sustain a daily work routine.  Plaintiff states that any hypothetical presented to the vocational

24   expert had to include his mental symptoms, low intellectual functioning, chronic and recurrent

25   physical symptoms, potential absenteeism, and need to take breaks for his bathroom needs.

26   Defendant counters that Plaintiff is making a catchall argument to find fault with the residual

27   functional capacity finding.  Defendant takes the position that the ALJ properly evaluated the

28   evidence in the record and based his residual functional capacity finding on substantial evidence.

A social security claimant's residual functional capacity is the most the individual can still do despite his limitations.  20 C.F.R. § 416.945(a)(1).  The ALJ is to assess the claimant's residual functional capacity based on all the relevant evidence in the case record.  20 C.F.R. § 416.945(a)(1).  The ALJ is not required to include a function by function analysis in the plaintiff's residual functional capacity.  Bayless, 427 F.3d at 1217.

Here, the ALJ considered the record and set forth his findings regarding the credibility of Plaintiff, his father, and an evaluation of the medical evidence.  The ALJ determined that Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours; sit for 6 hours; and can perform simple repetitive tasks without public contact.

Plaintiff alleges that the ALJ failed to include his mental symptoms and low intellectual functioning in determining his residual functional capacity.  However, the ALJ considered that Dr. Murphy found that Plaintiff did not have difficulty handling everyday activities of daily living: such as bathing, eating meals, and socializing.  (AR 410.)  Plaintiff had no difficulty understanding what was asked of him concerning the various tasks during the mental status examination, and did not demonstrate difficulties understanding the simple instructions of the various tasks, confidentiality, and the reason for the examination.  (AR 410.)  While there were some psychological impairments noted, Plaintiff appeared to understand and follow simple, basic instructions without difficulty.  (AR 410.)  Further, Plaintiff was able to sit for over two hours without a break and did not complain of physical or mental discomfort.  (AR 410.)  Dr. Murphy opined that Plaintiff does not have problems with concentration persistence and pace; would not experience emotional deterioration in work like situations, can understand, carry out and remember simple instructions, will not have difficulty responding appropriately to usual work situations or in dealing with changes in routine work settings.  (AR 409.)  Dr. Murphy opined that Plaintiff is capable of performing simple repetitive tasks on a regular basis.  (AR 409.)  The residual functional capacity took into account Plaintiff's mental impairments.  The ALJ gave some weight to this opinion and the opinions of the agency physicians, but found that Plaintiff's additional evidence demonstrated limitations more severe than previously indicated, and limited

1  Plaintiff to simple repetitive tasks with no public contact.  (AR 14-16)

2       Plaintiff also alleges that the ALJ failed to consider Plaintiff's chronic and recurrent

3  physical symptoms and need to take breaks for his bathroom needs.   However, the ALJ

4  considered the opinion of Dr. Stoltz who opined that Plaintiff at times would require more

5  frequent bathroom breaks, but otherwise has no particular limitations on lifting, carrying, sitting,

6  standing, walking, not use of his hands or feet.  (AR 403.)  The ALJ found that since Dr. Stoltz

7  was not Plaintiff's treating physician he was less able to accurately evaluate Plaintiff's long term

8  functional capacity.   The ALJ also considered Plaintiff and Mr. Valenzuela's testimony

9  regarding Plaintiff's symptoms.  The ALJ found that Plaintiff's allegations as to the severity of

10 his symptoms was not credible as discussed above.

11      The ALJ's residual functional capacity finding included all those limitations that the ALJ

12 found to be credible and is supported by substantial evidence in the medical record.

13                                             **V.**

14                            **CONCLUSION AND ORDER**

15      Based on the foregoing, the Court finds that the ALJ did not err in determining that

16 Plaintiff was not disabled.  Accordingly,

17      IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

18 Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

19 entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jeremiah

20 Valenzuela.  The Clerk of the Court is directed to CLOSE this action.

21

22 IT IS SO ORDERED.

23 Dated:   __**June 29, 2016**__                    _____

24                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28